JOHN REDDEN et al., Appellants, v. MARY MURRAY et al., Appellees.

No. 41062.

NOVEMBER 24, 1931.

Rosewater, Mecham, Burton, Hasselquist & Chew and Bailie & Edson, for appellants.

Whitney, Whitney & Stern, for appellees.

Evans, J.—The grantor in the conveyances under attack was Tom Redden, who died unmarried, in a hospital at Albuquerque on May 24, 1929. The conveyances under attack were made and recorded by him on September 14, 1920. The plaintiffs comprise his brothers and sisters and their representatives, exclusive of Mary Murray, the defendant, who was also a sister. M. S. Murray was the husband of Mary. He died pending the action, and his administrator has been substituted. Mary Murray and her husband, M. S. Murray, were the grantees in the conveyances under attack. The conveyances under attack were three in number and purported to convey three separate tracts, all of which, however, constituted one farm of 263 acres. This farm was formerly owned by Patrick and Catherine Redden, parents of the parties hereto. Patrick died in 1899, leaving a will, which purported to devise the farm to Catherine. The form of the devise was held to be inadequate for that purpose, and quitclaim deeds were executed by all of the children to their mother. In 1902 the farm was sold by the mother to the son, Tom Redden, for a consideration of $10,000. Upon such purchase Tom entered into possession of the farm and so continued up to the time of his death. Catherine died in 1911. The conveyances under attack purport to have been made for the consideration of $1.00 and "other good considerations". There is no claim that Tom was under any mental disability to any degree. On the contrary, it discloses him to be mentally competent in every respect. The conveyances made were clearly voluntary on his part and were made solely upon his own initiative. Shortly before the making thereof, he indicated his purpose to his sister, Mary, and requested her and her husband to come to Storm Lake (his place of residence) in order to receive the deeds. It was in response to such request that they came. At that time their home was at Galva, not far distant. The deeds were prepared by an attorney and executed in his

office. The farm was conveyed in three tracts,—each tract to a different grantee. What is referred to as the "middle" 103 acres was conveyed to Mary and her husband jointly, as grantees. Another tract, comprising 80 acres, was conveyed to Mary singly, as grantee; and the third, likewise comprising 80 acres, conveyed to the husband of Mary, singly, as grantee. The major conveyance of 103 acres contained the reservation in the grantor of a life estate: The other deeds contained no such reservation. The grantor caused the deeds to be recorded and later mailed to the grantees. At the time of these conveyances, the farm was under lease to Clare Murray, son of the grantees, and he continued as the lessee thereof under his uncle until his death, in 1929. During the intervening nine years following the conveyances, the fact was known to the present plaintiffs and it did not appear to have stimulated any special challenge by the plaintiffs.

Tom Redden was afflicted with tuberculosis. In 1922 Mary Murray and her husband moved to Storm Lake and Tom made his home with them thereafter. Tom continued the possession and management of the farm in his own apparent interest. Though there was no reservation of a life estate as to the 80-acre tracts conveyed singly to husband and wife, yet he made no distinction in his attitude as to the different tracts. He demeaned himself as though he had a like reservation as to all tracts. This attitude on his part was always acquiesced in by the Murrays. They never took any present benefit from their conveyances, nor challenged in any manner the attitude of the grantor. It appears from the evidence that the farm was worth in 1920, $60,000. The grounds upon which the plaintiffs challenge the validity of the conveyances, as indicated in their pleadings, are not wholly consistent. One contention is that the conveyances were received from the grantor under an understanding with the grantor that the property should be equally divided among the brothers and sisters after the death of the grantor. Some of plaintiffs' allegations amount to a claim of express trust created by oral understanding, to which we devote no special attention. The argument in terms claims only a constructive trust. This is predicated largely upon the theory that the conveyance was unconscionable, in that it covered highly valuable property and was without any substantial consideration.

It is further claimed that in the original acquisition of the farm by Patrick Redden, the father, some of the plaintiffs contributed to the purchase money, and that the father held the title in resulting trust. It is claimed further that the mother, Catherine, took title from her children by quitclaim deed, with the understanding that the same should be held in trust; that she conveyed the land to Tom, in 1902, in breach of her duty, as trustee. As claimants under their father, they challenge the fee title of their mother; and as claimants under their mother, they challenge the fee title of Tom, as grantee of his mother. Their ultimate contention is that they should take under their brother, Tom, and that the conveyances made by him should be deemed to have been made for the purpose of distributing the estate equally between them.

There is no evidence that would sustain a claim of resulting trust in the father, nor any evidence that the sale by the mother to Tom in 1902 was in breach of faith or that the consideration was inadequate. Nor is there any evidence that savors of fraud or duress or undue influence on the part of the grantees in obtaining the conveyances in 1920. To sustain the contention of the appellants upon this record would be to hold that the brother, Tom, was not competent to make a prospective gift of his property. We have read the record carefully, and we find little room for doubt as to what the real intent of the grantor was. We think he did intend that the Murrays should be the final recipients of the major part of his property. It is apparent also that there was some indefinite reservation between them as to considerations, to be determined perhaps by later negotiations. It appears that, shortly before his death, he executed a will, which was addressed to his sister in the form of a letter, and was as follows:

"Mrs. Maurice Murray

"300 Genessee Street ·

"Storm Lake, Iowa

"As my last will and testament please have Four hundred and fifty ($450.00) given to the Extension for Masses for Mother and Father, Brother and Sister and self. Fifty Dollars ($50.00) to the home priest, for Masses for the repose of my soul. Five hundred ($500.00) to my sister in law—Mrs. Mary Redden in California. One thousand dollars ($1,000.00) to Mrs. Ann

Dannaher. One hundred Dollars ($100.00) to St. Joseph Sanatorium, Albuquerque, New Mexico.

"Burial to be with Father and Mother. Inexpensive casket.

"Tom Redden

"Witnesses

"Katherine Corbin

"Mary Dillon

"Subscribed and sworn this 14th day of May, 1929.

"Sister Mary Kathleen O'Donnell,

"Notary Public."

Mrs. Murray recognized the call of this will as obligatory upon her. She performed its requests in full. They may fairly be regarded, upon this record, as constituting the "other considerations" stated in the conveyances. It will be noted that the will makes no reference to the real estate or to the conveyances thereof. He necessarily knew that he had conveyed the title to the Murrays. The very silence of the will upon the subject was in the nature of a ratification of what he had previously done. He never challenged the conveyances, nor requested any return or modification. Though he continued in a possession that was broader than his written reservations, and received the rents and paid the taxes, yet he always paid the taxes in the names of the grantees. The evidence before us will not warrant a fair suspicion that the intent of the grantor was any other than the conveyances imported, unless it be the failure of two of the deeds to contain the reservation of a life estate. That there may have been oral understandings relating to future contingencies, as to which the brother may have had implicit trust in the sister, does not militate in any degree against the validity of the transaction, as written. There is virtually no evidence in this record of any wrongful act on the part of these grantees, upon which a constructive trust may be predicated. Counsel for the appellants recognize the fact that they may not establish an express trust by parol.

We think the district court properly entered its decree for the defendants, and its judgment is accordingly affirmed.

FAVILLE, C. J., and KINDIG, MORLING, and GRIMM, JJ., concur.